IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | | |
|---|---|---|
| JANE DOE, by and through C.B. | : | Case No. 2:23-cv-00151-DCR |
| Plaintiffs, | : | Judge Danny C. Reeves |
| vs. | : | |
| DIOCESE OF COVINGTON, et al. | : | |
| Defendants. | : | |

**MEMORANDUM IN SUPPORT OF THE MOTION FOR JUDGMENT ON THE PLEADINGS OF DEFENDANT, CLY DENNA HEHMAN**

Defendant, Cly Denna Hehman ("Mrs. Hehman"), by and through counsel, hereby states as follows for the Memorandum in Support of her Motion for Judgment on the Pleadings.

**INTRODUCTION**

This case concerns alleged race and disability discrimination against an 8th grade student at a private Catholic grade school. Jane Doe claims her English teacher, Mrs. Hehman, knew Jane Doe was the only 8th grade student who identified as African American, yet Mrs. Hehman "singled out and harassed" her by asking the students in class to raise their hands if they were black. Plaintiffs also allege Mrs. Hehman repeatedly used the word "n*****" in class. Plaintiffs claim disability discrimination by theorizing that Jane Doe was specifically targeted with these racial "attacks" because a disability limits her ability to communicate and report events.

The vast majority of these allegations are denied, including Plaintiffs' suggestion that Mrs. Hehman was aware that Jane Doe, who was new to the school during the year in question, identified as African American. But, the true unfairness of this case is that it arises from an educational lesson about the *evils* of racial prejudice. During the lesson, Mrs. Hehman identified four racial slurs—including "n*****"—a single time (not "repeatedly" as Plaintiffs claim), in

1

order to reinforce that these words should not be used. Plaintiffs omit this important educational context from the Complaint, in order to mischaracterize the lesson as an example of racial prejudice (superimposed upon disability prejudice). In reality, the lesson was the exact opposite: a ***condemnation*** of prejudice in all forms.

Despite the strongly disputed factual allegations, Plaintiffs' five claims against Mrs. Hehman fail as a matter of law. Plaintiffs' race discrimination and disability discrimination claims (Counts 1 and 3) fail because individuals cannot be sued under Title VI or Section 504 of the Rehabilitation Act. Plaintiffs' false imprisonment claim (Count 5) fails because Plaintiffs have failed to allege any actual detention of Jane Doe, much less an unlawful one. Plaintiffs' intentional infliction of emotional distress claim (Count 7) fails because the allegations, even when viewed in the light most favorable to Plaintiffs, do not establish the requisite mental state or the extremely high burden for outrageous conduct. Finally, Plaintiffs' retaliation claim (Count 8) fails because Mrs. Hehman is not a state actor who is subject to suit under 42 U.S.C. § 1983. Thus, Mrs. Hehman respectfully requests dismissal of all claims asserted against her.

## PROCEDURAL HISTORY

On October 30, 2023, Jane Doe, by and through her mother, C.B., filed this action against the Diocese of Covington, St. Joseph Catholic Church, Mrs. Hehman, Gerald Reinersman, and John Does 1-20.[1] The Complaint contains nine causes of action in total, but it varies with regard to whom each claim is asserted against. This Motion is directed only at the five claims asserted against Mrs. Hehman.

---

[1] The proper name for the diocese is the Roman Catholic Diocese of Covington. It is referred to herein as "the Diocese." St. Joseph Catholic Church is not a separate legal entity from the Diocese, but insofar as Plaintiffs are attempting to assert claims against the school (rather than the parish), St. Joseph Catholic School is a more appropriate identifier. The school is referred to herein as "St. Joseph."

On December 28, 2023, the Defendants filed an Answer denying any wrongful conduct and denying most of Plaintiffs' factual allegations. (Doc. 6) The Answer also provided the educational context that had been stripped from Plaintiffs' version of events, as well as the Defendants' response to some of Plaintiffs' unfair and one-sided allegations.

### FACTUAL ALLEGATIONS AGAINST MRS. HEHMAN

**I.     The alleged (and strongly disputed) racial discrimination by Mrs. Hehman.**

Plaintiffs allege Mrs. Hehman was aware, prior to the events in issue, that Jane Doe was the only 8th grade student at St. Joseph who identified as African American. (Doc. 1, ¶ 30.) To the contrary, Mrs. Hehman denies knowing the ethnicity of Jane Doe, who had been a student at St. Joseph for only eight months at that point. (Doc. 6, ¶ 30.)

According to the Complaint, on April 17, 2023, Mrs. Hehman "singled out and harassed" Jane Doe by asking her students to raise their hands if they were black. (*Id*., ¶¶ 27 and 30.) Then, on April 18, 2023, Mrs. Hehman repeatedly used the word "n*****" during class, including when she allegedly explained that people need to "be careful who you say 'n*****' around because you will be ex-ed out of society." (*Id*., ¶¶ 32, 34.) The Complaint claims other students felt bad for Jane Doe and immediately spoke up in her defense by telling Mrs. Hehman she should not have used the word in class. (*Id*., ¶ 36.)

Mrs. Hehman denies ever asking students to raise their hands to identify their ethnicity. (Doc. 6, ¶ 30.) Mrs. Hehman admits to using the word "n*****" a single time, however the Answer provides the educational purpose and critical context of the class lesson at issue, which concerned the book *Blindsided: The Life and Times of Sam Mihara*, an autobiography about the author's experience during the internment of Japanese Americans during World War II. (*Id*., ¶ 32.) Mrs. Hehman was reading the book to the students in the 6th, 7th, and 8th grades in

3

anticipation of a presentation by Mr. Mihara, a renowned speaker on issues relating to race and prejudice, at St. Joseph on April 24, 2023. (*Id*.)

On April 18, 2023, Mrs. Hehman was reading the book aloud to her 8th grade English class, when she showed the class the following photograph from the book, which featured a derogatory term for Japanese Americans:



(*Id*.) Mrs. Hehman then identified this term as a racial slur that is comparable to three other racial slurs. In the context of this lesson—the purpose of which was to teach about the evils of racial prejudice and how these terms should not be used—Mrs. Hehman used the word "n*****" a single time. (*Id*.) Defendants deny that any students spoke up in objection to the lesson. (*Id*., ¶ 36.)

## II. The alleged (and strongly disputed) harassment and retaliation by Mrs. Hehman.

The Complaint alleges that after Jane Doe and her mother, C.B., made continued complaints to the school, Mrs. Hehman proceeded to harass and retaliate against Jane Doe. For instance, Plaintiffs allege Mrs. Hehman "forced herself on to an elevator" with Jane Doe and gave "an intimidating lecture on how JANE was taking her words [from the lesson on April 18, 2023] out of context and that JANE needed to, 'drop the whole thing.'" (Doc. 1, ¶ 46.) Mrs. Hehman admits only that she happened to ride the elevator with Jane Doe and another student on one occasion; she denies Plaintiffs' characterization of the event. (Doc. 6, ¶ 46.)

4

Plaintiffs next allege that during a school Mass, Mrs. Hehman "purposefully refused JANE the opportunity to experience communion." (Doc. 1, ¶ 48-50.) Mrs. Hehman denies any allegation that she acted inappropriately while administering communion to Jane Doe. (Doc. 6, ¶ 50.)

Finally, Plaintiffs allege Jane Doe was "forced to engage with HEHMAN on school grounds against her will," and she "did not ever free feel [*sic*] to leave or escape the interactions with HEHMAN." (Doc. 1, ¶¶ 53-54.) In reality, Jane Doe was never forced to interact with Mrs. Hehman. Jane Doe was immediately moved to a different English class, and every effort was made to avoid interaction between the two for the rest of the school year. (Doc. 6, ¶¶ 53-54.) For instance, Mrs. Hehman elected to forego the 8th grade class trip and 8th grade graduation, and she secured a substitute on the two subsequent occasions that she was scheduled to be an Extraordinary Minister of Holy Communion. (*Id.*)

## PLAINTIFFS' CLAIMS AGAINST MRS. HEHMAN

Based on the foregoing allegations, Plaintiffs assert five claims against Mrs. Hehman:

- Count 1: Race discrimination under Title VI
- Count 3: Disability discrimination (harassment) under 29 U.S.C. § 701[2]
- Count 5: False imprisonment
- Count 7: Intentional infliction of emotional distress ("IIED")
- Count 8: Retaliation under 42 U.S.C. § 1983

As shown below, notwithstanding the disputed issues of fact, all of these claims fail as a matter of law. Accordingly, Mrs. Hehman is entitled to judgment on the pleadings.

## LEGAL ARGUMENT

"The court analyzes a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings under the same standard as a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Campbell v.*

---

[2] The theory behind this claim is that Mrs. Hehman "specifically targeted and retaliated against JANE in these settings because HEHMAN knew JANE had a communication disability and would have difficulty reporting her actions." (Doc. 1, ¶ 51.)

5

*Cracker Barrel Old Country Store, Inc.*, 2020 U.S. Dist. LEXIS 253539, *3 (W.D. Ky. Mar. 9, 2020). "Therefore, to survive a Rule 12(c) motion, a complaint must contain enough facts to state a claim to relief that is plausible on its face." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted). The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully; the factual allegations must "raise a right to relief above the speculative level." *Id*. (quoting *Bell v. Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). When analyzing the sufficiency of the Complaint, this Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010) (citation omitted).

"In considering a motion for judgment on the pleadings, the court considers the pleadings, which consist of the complaint, the answer, and any written instruments attached as exhibits." *Campbell*, 2020 U.S. Dist. LEXIS 253539, at *3. Although the allegations in the complaint are the "primary focus," other items appearing in the record may also be taken into account. *Id*. at *4.

**I.     Plaintiffs' federal claim against Mrs. Hehman for race discrimination (Count 1) should be dismissed because individuals cannot be sued under Title VI.**

Plaintiffs allege Mrs. Hehman discriminated against Jane Doe on the basis of her race. (Doc. 1, ¶ 67.) Plaintiffs assert, against all of the Defendants, a claim under Title VI of the Civil Rights Act. Title VI, which is codified at 42 U.S.C. § 2000d, prohibits race discrimination by entities which receive Federal financial assistance.

The Defendants deny all allegations of race discrimination, but the Title VI claim against Mrs. Hehman fails as a matter of law because such a claim can only be asserted against the entity which receives Federal financial assistance, not an individual. *Buchanan v. City of Bolivar, Tenn.*, 99 F.3d 1352, 1356 (6th Cir. 1996) ("Plaintiff's claim also fails because she asserts her claim

6

against Lawson and Weaver and not against the school, the entity allegedly receiving the financial assistance."); *Vinova v. Henry Cnty. Bd. of Educ.*, 2015 U.S. Dist. LEXIS 159492, *4 (E.D. Ky. Nov. 24, 2015) ("Defendants correctly point out that claims under Title VI cannot be brought against private individuals. … [T]he Sixth Circuit has dismissed claims when a plaintiff brings suit against individuals instead of the entity allegedly receiving such financial assistance."); *Huang v. Presbyterian Church (U.S.A.)*, 346 F. Supp. 3d 961, fn. 21 (E.D. Ky. 2018) ("Plaintiff's Title VI claim fails to state a claim against any individual Defendants. …  The University is the only entity allegedly receiving the financial assistance.  Thus, Plaintiff cannot plausibly allege Title VI claims against the individual Defendants.") (citations and quotation marks omitted).

For the simple reason that Mrs. Hehman is an individual, rather than an entity receiving Federal financial assistance, Count 1 fails against her as a matter of law.

**II.    Plaintiffs' federal claim for disability discrimination (Count 3) should be dismissed because individuals cannot be sued under Section 504 of the Rehabilitation Act.**

Plaintiffs allege Mrs. Hehman discriminated against Jane Doe and harassed her on account of an alleged disability which "limited her ability to clearly communicate feelings, emotions, and events."  (Doc. 1, ¶¶ 81-83.)  Plaintiffs assert this claim under Section 504 of the Rehabilitation Act.  (*Id.*, ¶ 85)  Section 504, which is codified at 29 U.S.C. § 794(a), prohibits disability discrimination by entities which receive Federal financial assistance.

Plaintiffs' attempt to interject alleged disability discrimination into this case is nothing more than legal window dressing.  But more importantly, this claim fails as a matter of law because individuals like Mrs. Hehman cannot be sued under the Rehabilitation Act.  *Bevington v. Ohio Univ.*, 93 Fed. Appx. 748, 750 (6th Cir. 2004) (holding a student's disability discrimination claim under the Rehabilitation Act was properly dismissed: "Bevington may not maintain an action under the RA against the individuals identified in his complaint because the RA does not impose liability

7

upon individuals."); *Fitch v. Ky. State Police*, 2010 U.S. Dist. LEXIS 120013, *19 (E.D. Ky. Nov. 10, 2010) (dismissing a Rehabilitation Act claim against an individual police officer on this basis); *H.C. v. Fleming Cty. Ky. Bd. of Educ.*, 2017 U.S. Dist. LEXIS 155973, *10-11 (Sept. 25. 2017) (dismissing a Rehabilitation Act claim against several individuals on this basis); *E.M.J. v. Garrard Cty. Bd. of Educ.*, 413 F. Supp. 3d 598, 608 (E.D. Ky. 2019) (noting that Section 504 of the Rehabilitation Act does not authorize suits against individuals.)

For the simple reason that Mrs. Hehman is an individual, rather than an entity receiving Federal financial assistance, Count 3 of Plaintiffs' Complaint fails as a matter of law.

### III.  Plaintiffs' state-law claim for false imprisonment (Count 6) should be dismissed because Plaintiffs have failed to allege a plausible claim.

Plaintiffs claim Mrs. Hehman "restrained JANE against her will," because Jane Doe was "confined and bound to classroom space, and an elevator without justification." (Doc. 1, ¶ 93-94.) These legal conclusions, which the Court need not accept on this Motion, are references to the alleged elevator incident, as well as Plaintiffs' allegation that Jane Doe was "forced … to engage with HEHMAN on school grounds against her will." (*Id.*, ¶ 53.)

These allegations are denied. (Doc. 6, ¶¶ 46, 53.) But even if they were true, they fail to plausibly state a claim for false imprisonment, which "requires the plaintiff to establish that she was detained unlawfully." *Birdson v. Wal-Mart Stores*, 74 S.W.3d 754, 757 (Ky. App. 2001).

#### A.  The Complaint fails to allege that Jane Doe was detained—*i.e.,* subject to actual physical restraint or threat of physical restraint.

In order to state a false imprisonment claim under Kentucky law, "it is essential that there be some direct restraint present." *Ford Motor Credit Co. v. Gibson*, 566 S.W.3d 154, 155 (Ky. App. 1977). Direct restraint may occur via acts, words, or gestures, but whatever its form, the restraint must "induce a reasonable apprehension that *force* will be used if the plaintiff does not

8

submit." *Id*. (emphasis added). "Submission to the mere verbal direction of another unaccompanied by force, or threats of any character, does not constitute false imprisonment." *Grayson Variety Stores, Inc. v. Shaffer*, 402 S.W.2d 424, 425 (Ky. 1966).

Here, Plaintiffs allege Jane Doe "was not free to leave the classroom space or the elevator because of the physical location of the confinement and authority that HEHMAN held over JANE." (Doc. 1, ¶ 96.) These references to the "physical location of the confinement" and Mrs. Hehman's "authority" are confusing and vague, probably deliberately so. However, it is clear that Plaintiffs are not alleging that Mrs. Hehman physically restrained Jane Doe, by force, to an elevator or classroom space. Nor do Plaintiffs allege that Mrs. Hehman threatened to physically restrain Jane Doe with force if she tried to leave an elevator or classroom space. These are the allegations necessary to establish a detention for purposes of a false imprisonment claim under Kentucky law. *Contrast Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. App. 2001) (reinstating a false imprisonment claim where a teacher admittedly chained a student to a tree by his ankle and neck), *with Grayson*, 402 S.W.2d at 425 (reversing verdict in favor of 15-year-old and 10-year-old girls who were questioned about shoplifting, asked to return to the store, and subject to search—because "they were not detained or held by threat or threat of force"), *and Starks v. Mayfield Consumer Prods., LLC*, 2023 U.S. Dist. LEXIS 131967, *13 (W.D. Ky. July 31, 2023) (granting judgment on the pleadings where the allegations about verbal threats of being fired if the plaintiff left work did not "come close" to the Kentucky standard on false imprisonment.)

Because Plaintiffs' Complaint fails to allege that anyone physically restrained Jane Doe or threatened to physically restrain Jane Doe, the Complaint fails to plausibly demonstrate a detention. Accordingly, Mrs. Hehman is entitled to judgment on the claim as a matter of law.

9

### B. The Complaint also fails to plausibly demonstrate an *unlawful* detention.

As shown above, Jane Doe was never detained. But even if she had been, the claim would still fail for lack of unlawfulness. For instance, in *Flege v. Williamstown Indep. Schs.*, 2007 U.S. Dist. LEXIS 14631 (E.D. Ky. 2007), the Court granted summary judgment in case involving an in-school suspension of minor children in the "ABC room," due to repeated tardiness:

> The Flege children were not assigned to the ABC room unlawfully. The moment the Flege children arrived to school on May 16, 2005, they were in [Williamstown Elementary School's] lawful custody. This provides the school administrators with authoritative and disciplinary discretion to determine where the children are to be located during the school day. The children were never forced to remain in the ABC room when Mrs. Flege arrived at the school to withdraw her children. The moment she was present to retain custody of her children, the school relinquished said custody.

*Id*. at *73-74.

For the same reasons, Plaintiffs cannot state a claim based on a mere allegation of where Jane Doe was located during the school day, when Jane Doe was in St. Joseph's lawful custody. For this additional reason, Plaintiffs' false imprisonment claim (Count 5) fails as a matter of law.

### IV. Plaintiffs' state-law claim for IIED (Count 7) should be dismissed because the allegations do not state a plausible claim.

The elements of an IIED claim are: (1) the wrongdoer's conduct must be intentional or reckless; (2) the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality; (3) there must be a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the distress must be severe. *Osborne v. Payne*, 31 S.W.3d 911, 913-914 (Ky. 2000). Plaintiffs' IIED claim fails at the first two elements.

### A. Plaintiffs have not plausibly alleged intent on the part of Mrs. Hehman to cause severe emotional distress to Jane Doe.

With regard to the necessary mental state, the actor must have had "the specific purpose of causing emotional distress … or intended a specific conduct and knew or should have known that

10

it would cause emotional distress[.]" *Childers v. Geile*, 367 S.W.3d 576, 580 (Ky. 2012). Here, Plaintiffs claim Mrs. Hehman committed "callous actions aimed at inflicting mental and emotional damage." (Doc. 1, ¶ 108.) To the extent this is an allegation of specific intent to cause emotional distress, it need not be accepted as true at this stage. *Terry*, 604 F.3d at 276 ("We need not accept as true legal conclusions or unwarranted factual inferences[.]") (citation omitted).

The following considerations demonstrate why any claim of specific intent to cause emotional distress is implausible, unwarranted, and insufficient to state a claim. First, Mrs. Hehman was not even aware that Jane Doe, who had only been a student at St. Joseph for eight months at that point, identified as African American. (Doc. 6, ¶ 30.) Without such prior knowledge, it is impossible to theorize that Mrs. Hehman set out on some purposeful course to single out Jane Doe based on her race and thereby cause severe emotional distress.

Second, Mrs. Hehman's use of the word "n*****"—whether used once or more than once on April 18, 2023—did not arise in a vacuum, such that the only purpose behind its use would be to cause anyone emotional distress. To the contrary, the word was used in the context of a lesson on racial prejudice, and it was cited only as an example of a derogatory term that should never be used. (Doc. 6, ¶ 32.) It is implausible to claim that an English teacher specifically intended to cause emotional distress by identifying a word as a racial slur that none of the students should use. The intent on the part of Mrs. Hehman was clearly to educate. Plaintiffs' attempt to characterize the lesson on April 18 as some sort of front, when in reality her intention was to cause emotional distress to Jane Doe, falls far short of the plausibility pleading standard.

Third, upon learning that Jane Doe was offended by the lesson, Mrs. Hehman offered to write, and did in fact write, an apology note to Jane Doe. The note stated as follows:

11

> I pray for forgiveness. My objection in my lesson was that some words hurt and are insensitive. By the way I presented the lesson, I actually hurt you, and for this I am deeply sorry. There was no malice in my words. I have learned and will endeavor to be a more sensitive teacher. In the words we pray at the end of each school day… "I ask pardon of all whom I have injured."

(Doc. 6-1.) Bad actors who have the specific intent of causing emotional distress do not apologize when learning that someone was offended.

For these reasons, Mrs. Hehman respectfully submits that Plaintiffs' IIED claim fails at the first element.

**B.   Plaintiffs' allegations, even when viewed in their favor, do not rise to the level of extreme and outrageous conduct.**

Even when the requisite mental state can be established, the standard for recovery on an IIED claim is high. The conduct must be "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky. 1990) (quoting Restatement (Second) of Torts, § 46, cmt. d)). "It is for the court to decide whether the conduct complained of can reasonably be regarded to be so extreme and outrageous as to permit recovery." *Keaton v. G.C. Williams Funeral Home, Inc.*, 436 S.W.3d 538, 544 (Ky. App. 2013).

With regard to the use of a derogatory racial term, the key factor bearing on outrageousness is the context. *See Gray v. Wal-Mart Stores, Inc.*, 2012 U.S. Dist. LEXIS 133213, *14 (W.D. Ky. Sept. 17, 2012) ("The isolated and infrequent use of derogatory racial terms must be taken in light of the context spoken to determine whether those statements rise to the level of outrage required for a IIED claim.") The context is critical because even the single use of a derogatory racial slur could, depending on the circumstances, be considered outrageous. *Id*. (denying a motion to dismiss because "any such use [of the word n*****] could be deemed extremely offensive and outrageous," and the circumstances surrounding the defendant's use of the word were unclear).

12

In this case, Plaintiffs do not even allege that the word "n*****" was directed at Jane Doe; her allegation is just that the word was used more than once during a lesson. (Doc. 1, ¶ 32.) Further, the word was identified in the context of an educational lesson on racial prejudice, for the purpose of reinforcing that such words should not be used. (Doc. 6, ¶ 32.) To characterize the incidental use of the word in an educational context as outrageous is too far a legal leap.

The remainder of Plaintiffs' allegations likewise fail to establish outrageous conduct. Indeed, the alleged statement in the elevator about Jane Doe needing to "drop the whole thing," the alleged staring at Jane Doe, and the alleged denial of "the opportunity to experience communion"—all of which are denied—do not go beyond all possible bounds of decency, so as to regarded as atrocious, and utterly intolerable in a civilized community.

Moreover, the conduct must not only be outrageous in character, but also "extreme in degree" to be actionable. For instance, the Court held that a plaintiff had stated an IIED claim when he alleged that he had been "subjected to racial remarks on nearly a daily basis by his coworkers and supervisors for a period of nearly seven years." *Wilson v. Lowe's Home Ctr.*, 75 S.W.3d 229, 238 (Ky. App. 2001). Plaintiffs' factual allegations, even if accepted as true, only establish a few instances of (alleged) behavior that Jane Doe found offensive. This does not even come close to the frequency and longevity of the racial indignities alleged in *Wilson*.

For these reasons, Mrs. Hehman respectfully submits that Plaintiffs' IIED claim also fails at the second element, which entitles her to dismissal of the claim.

**V.     Plaintiffs' federal claim against Mrs. Hehman for retaliation (Count 8) should be dismissed because she is not a state actor subject to 42 U.S.C. § 1983.**

Plaintiffs assert a retaliation claim against Mrs. Hehman under 42 U.S.C. § 1983, which "by its own terms, applies only to those who act under color of state law." *Weser v. Goodson*, 965 F.3d 507, 515 (6th Cir. 2020). "Therefore, as a general rule, § 1983 does not reach the conduct of

13

private parties[.]" *Id*. at 515-516; *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) (noting that the state-actor requirement of § 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrongful").

In this case, Plaintiffs do not allege that Mrs. Hehman was a public person who was acting under color of state law. Quite the contrary, Plaintiffs admit Mrs. Hehman was a teacher at a private Catholic school. (*See* Doc. 1, ¶¶ 15-16 and 74, where Plaintiffs recognize the Diocese and St. Joseph are private entities.) And, private schools are almost always considered private actors who are not subject to suit under § 1983. *See Raithatha v. Univ. of Pikeville*, 2017 U.S. Dist. LEXIS 169366, *22-23 (E.D. Ky. Oct. 13, 2017) (granting summary judgment under *Rendell-Baker v. Kohn*, 457 U.S. 830, 830-832 (1982), in which the Supreme Court held that a private school was not a state actor—even though nearly all of the students were referred by a state agency, the school was heavily regulated under state law, and public funding accounted for at least 90% and sometimes 99% of the school's operating budget).

Despite conceding that Mrs. Hehman is a private actor, Plaintiffs have failed to plead any allegations to overcome the general rule and subject Mrs. Hehman to liability as a state actor under § 1983. For instance, the phrase "color of state law" appears nowhere in Plaintiffs' 20-page Complaint.[3] Moreover, it is well-established that § 1983 can apply to private parties only when their actions "so approximate state action that they may be fairly attributed to the state." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). Plaintiffs assert no allegations that could even theoretically attribute Mrs. Hehman's actions to the state.

---

[3] Even if Plaintiffs had included the phrase "under color of state law," mere allegations that a private defendant is a "state actor" or was "acting under color of law" are insufficient to survive a motion to dismiss. *See Marie v. Am. Red Cross*, 771 F.3d 344, 362 (6th Cir. 2014) (citing *Iqbal* and *Twombly*, *supra*).

14

For these reasons, Plaintiffs have failed to plead a plausible claim under § 1983. Mrs. Hehman is entitled to judgment on this claim.

## CONCLUSION

Despite resorting to sensationalized allegations stripped from their educational context, Plaintiffs have failed to plead any plausible claims against Mrs. Hehman. Accordingly, Mrs. Hehman respectfully requests dismissal of all claims asserted against her.

Respectfully submitted,

/s/ Mark D. Guilfoyle
Mark D. Guilfoyle (KBA #27625)
Nicholas C. Birkenhauer (KBA #91901)
Michael J. Enzweiler (KBA #96989)
DRESSMAN BENZINGER LAVELLE PSC
109 East Fourth Street
Covington, KY 41011
(859) 341-1881 (T)
(859) 341-1469 (F)
mguilfoyle@dbllaw.com
nbirkenhauer@dbllaw.com
menzweiler@dbllaw.com
*Counsel for Defendants*

1323951.1