UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | |
|---|---|
| JANE DOE, by and through C.B., | ) |
| Plaintiff, | ) Civil Action No. 2: 23-151-DCR |
| V. | ) |
| DIOCESE OF COVINGTON, et al., | ) **MEMORANDUM OPINION** |
|  | ) **AND ORDER** |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Jane Doe filed suit on behalf of C.B. on October 30, 2023, alleging that C.B. experienced race and disability discrimination as the sole African American eighth grade student at St. Joseph Catholic School. The Complaint contains a variety of civil rights and tort claims against the school and the Roman Catholic Diocese of Covington, as well as C.B.'s former teacher, the church's former pastor, and John Does 1-20. The defendants have filed separate motions for partial judgment on the pleadings. Their motions will be granted for the reasons outlined below.

**I.   Background**

Jane Doe is the mother of C.B., an African American student who suffers from dyslexia. C.B. attended eighth grade at St. Joseph Catholic School in Cold Springs, Kentucky. The school, which receives some federal funding and assistance, operates as part of the Roman Catholic Diocese of Covington.[1] As a student, Doe claims that C.B. experienced bullying,

---

[1] Although the Roman Catholic Diocese of Covington and St. Joseph Catholic School are both defendants, they are not distinct legal entities. For simplicity's sake, analysis of the claims asserted against them are consolidated.

harassment, and discrimination based on her race and disability. The harassment allegedly included being called a "n——" by classmates. [Record No. 1] She asserts, however, that the offending students did not face discipline for their wrongful actions. But the unfortunate events alleged do not stop there. In April 2023, C.B.'s teacher, Cly Hehman, purportedly asked students in the class to raise their hands if they identified as African American. As the only member of her race in the classroom, C.B. claims she felt "embarrassed" and "singled out." *Id*. Doe also alleges that Hehman later used the work "n——" multiple times during a lesson just days later. The teacher allegedly even warned students to "be careful who you say n—— around because you will be ex'ed out of society" after seemingly arguing that the offensive term used to be more colloquial generations ago. *Id*.

C.B. claims that some students chided Hehman for mentioning the word at all. Although Hehman admits to using it, she contends she did so purely for educational purposes. Hehman also reportedly claimed that C.B. "looked Hispanic so she should not have been offended by her use of the" term. *Id*. Embarrassed and humiliated by these events, C.B. reported the incident to a faculty member and the school's "administration was notified" as a result. *Id.*

Shortly thereafter, C.B. reports that she met with Monsignor Gerald Reinersman, pastor of St. Joseph Catholic Church at the time, to discuss the events and the importance of a resolution. Nevertheless, C.B. contends that her complaints went unaddressed by school officials who "refused to take any action." *Id*. And because of the school's refusal to intervene, Hehman's encounters with C.B. were allowed to continue for months. At one point, Hehman allegedly told C.B. to "drop the whole thing" while on an elevator with her. Later during a religious ceremony held by the school, C.B. claims that Hehman refused to serve her

communion as retaliation for C.B.'s refusing to withdraw her internal complaint, thereby depriving C.B. of her ability to exercise her religious beliefs with her classmates.

As a result of these reported actions, C.B. argues that she has been denied an equal education as other similarly situated students who are not part of the same racial class. She also alleges that the school and its administrators—who were responsible for supervising instructors and overseeing implementation of the school's curriculum—negligently hired and retained Hehman despite the teacher's "history of unprofessional behavior in the school setting." *Id*.

On behalf of C.B., Doe specifically pleaded claims of racial discrimination under Title VI of the Civil Rights Act of 1964 (Count One), in addition to 42 U.S.C. §§ 1981 and 1983 (Count Two); disability discrimination pursuant to 9 U.S.C. § 701 *et seq*. and 29 U.S.C. § 701 *et seq*. (Counts Three and Four); false imprisonment (Count Five); negligence (Count Six); intentional infliction of emotional distress (Count Seven); retaliation under 42 U.S.C. 1983 (Count Eight); as well as negligent hiring, retention, and supervision (Count Nine). Defendants Diocese of Covington, St. Joseph Catholic School, Monsignor Gerald Reinersman, teacher Cly Hehman, and John Does 1-20[2] have filed separate motions for partial judgment on the pleadings. Because many of the defendants share similar legal characteristics, the Court condenses its analyses of Doe's claims by reviewing the viability of each challenged cause of action.

---

[2] It is presumed that John Does 1-20 are agents or employees of the Diocese of Covington, St. Joseph Catholic Church, or St. Joseph Catholic School.

## II. Legal Standard

Within the Sixth Circuit, courts evaluating a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure generally follow the same standard as a motion to dismiss a complaint under Rule 12(b)(6). *See D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). Therefore, to survive a Rule 12(c) motion, "a complaint must contain enough facts to state a claim to relief that is plausible on its face." *Cracker Barrel Old Country Store, Inc.*, 2020 WL 9396617, at *3 ((W.D. Ky. Mar. 9, 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The factual allegations must "raise a right to relief above the speculative level" to show more than a sheer possibility that a defendant has acted unlawfully. *Id.* (quoting *Bell v. Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When analyzing the sufficiency of a Complaint, the Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *See Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010) (citation omitted).

When considering a motion for judgment on the pleadings, "the court considers the pleadings, which consist of the Complaint, the Answer, and any written instruments attached as exhibits." *Campbell*, 2020 WL 9396617, at *3. Although the allegations contained in the Complaint are the Court's "primary focus," other items appearing in the record may be taken into account. *Id.* at *4.

## III. Discussion

### A. Race Discrimination under Title VI of the Civil Rights Act

Jane Doe claims that teacher Cly Hehman, Monsignor Gerald Reinersman, John Does 1-20, as well as entities Diocese of Covington and St. Joseph Catholic School, violated Title

VI of the Civil Rights Act by discriminating against C.B. based on race. In general, Title VI prohibits discrimination based on race, color, or national origin in programs or activities that receive federal financial assistance. 42 U.S.C. § 2000d et seq.

Only Defendants Hehman, Reinersman, and Does 1-20 challenge this claim based on the pleadings. Although these individuals do not receive federal funding directly, Doe's theory is that employees of an entity which receives federal assistance can be sued in their official capacities by extension. As such, she contends the named and unnamed individual defendants are liable under Section 601 of Title VI for intentional discrimination, claiming that "[a] plaintiff can assert a Title VI claim for both injunctive relief and monetary damages." *See Alexander v. Sandoval*, 532 U.S. 275, 279 (2001).

But history and precedent bar a plaintiff from stretching the zone of those subject to liability under this statute so broadly. This claim against the defendants in their official capacities fails as a matter of law because the statute can only be asserted against the entity which receives federal financial assistance, not an individual that represents an extension of the entity as an agent or employee. *See Buchanan v. City of Bolivar, Tenn.*, 99 F.3d 1352, 1356 (6th Cir. 1996); *Vinova v. Henry Cnty. Bd. of Educ.*, 2015 WL 7681246, *4 (E.D. Ky. Nov. 24, 2015) ("Defendants correctly point out that claims under Title VI cannot be brought against private individuals . . .[T]he Sixth Circuit has dismissed claims when a plaintiff brings suit against individuals instead of the entity allegedly receiving such financial assistance."); *Huang v. Presbyterian Church (U.S.A.)*, 346 F. Supp. 3d 961, fn. 21 (E.D. Ky. 2018) ("The University is the only entity allegedly receiving the financial assistance. Thus, Plaintiff cannot plausibly allege Title VI claims against the individual Defendants."). The Sixth Circuit requires dismissal of any Title VI claim asserted improperly against an individual. *Buchanan*, 99 F.3d

at 1356. With no possibility of individual liability under Title VI, Doe's claims of racial discrimination asserted against Defendants Hehman, Reinersman, and John Does 1-20 fail as a matter of law.[3]

### B. Race Discrimination under 42 U.S.C. §§ 1981 and 1983

Doe asserts in Count Two that the Diocese of Covington, St. Joseph Catholic School, Monsignor Reinersman, and John Does 1-20 engaged in racial discrimination in violation of 42 U.S.C. §§ 1981 and 1983. This statute, "by its own terms, applies only to those who act under the color of state law." *Weser v. Goodson*, 965 F. 3d 507, 515 (6th Cir. 2020). The Sixth Circuit has held that "as a general rule, § 1983 does not reach conduct of private parties." *Id.* at 515-516; *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) (noting that the state-actor requirement of § 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrongful"). Therefore, the viability of plaintiff's claims depends on whether the defendant operated as a state actor. *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)) (noting it is well-established that § 1983 can apply to private parties only when their actions "so approximate state action that they may be fairly attributed to the state.").

#### a. Diocese of Covington and St. Joseph Catholic School

The Diocese of Covington, of which St. Joseph Catholic School is a part, is a private entity organized as a non-profit under the laws of Kentucky. However, it receives federal funding and assistance through grant programs. Although private entities like churches and

---

[3] To the extent the plaintiff seeks injunctive relief for this claim and others, the Court notes that she has failed to identify any plausible form available to her because Doe has already graduated from St. Joseph Catholic School.

designated schools are generally immune from suit pursuant to Section 1983, they may be subject to liability if the entity's "actions so approximate state action that they may be fairly attributed to the state." *Lansing*, 202 F.3d at 828.

In *Lugar*, the Supreme Court identified an approach for determining whether "fair attribution" is possible for a private actor where actions are taken under color of state law. *Id*. To assist in determining when these conditions are met, the Sixth Circuit utilizes a three-part test, including: (1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test. *Id*.

First, the public function component requires a determination of whether "the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain." *Id*. (quoting *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)). Next, the state compulsion component "requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Id*. "More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives," such as control in selecting board membership or a role in determining policy. *See Wolotsky*, 960 F.2d at 1335. Finally, "[u]nder the nexus test, the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Id*. (internal citations omitted).

Doe contends that the Diocese of Covington and St. Joseph Catholic School receive federal funding. Although this assertion is uncontested, she does not specify the amount or detail the programmatic funding channel. In addition, she also claims that the entities are

subject to oversight by the Commonwealth of Kentucky, including certification of the school's curriculum. Therefore, when posed with the question of whether "the alleged infringement of federal rights [is] "fairly attributable to the state," Doe answers in the affirmative. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). But the record suggests a different answer.

First, rather than exercising powers traditionally reserved exclusively for the state, the Diocese of Covington offers merely religious services or a religious-based education for selected students. Based on the record, it appears that both entities are traditionally private in nature and exercise few, if any, powers reserved for government. The second and third tests can be condensed because it is not possible to conclude that the state encourages the actions of the private, religious entities so directly that their character is reasonably one and the same with the state itself. While the entities may receive government funding and grant assistance, it is presumably a *de minimis* amount based on their organizational structure as inherently private entities. And as the Supreme Court has held, a private "school's receipt of public funds does not make [its] decisions acts of the State." *Rendell–Baker v. Kohn*, 457 U.S. 830, 840 (1982). In that case, a university's public funding accounted for more than 90 percent of the school's operating budget. Yet, the school did not qualify as a state actor because it was determined that its leadership made decisions independent of the state. Other courts have followed suit by declining to find state action on behalf of churches and schools, despite being beneficiaries of government funding, when it is apparent that the state does not control the entity's decision-making. *See Spark v. Catholic Univ. of America*, 510 F. 2d 1277 (D.C. Cir. 1975) ("The fact the Federal Government contributes funds to the University, by itself, is insufficient to show the exercise of influence on University decision-making or the

encouragement of specific policies."); *see also Raithatha v. Univ. of Pikeville*, 2017 WL 4583245 (E.D. Ky. Oct. 13, 2017).

Doe offers no evidence to demonstrate that the diocese or the school is beholden to or compelled by government for taking certain actions in exchange for funding and assistance. And Doe's argument that oversight by the state renders the school a state actor is similarly foreclosed because even though an "entity is subject to state regulation does not by itself convert its action into state action." *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 350, 453 (1974). Rather, it must be demonstrated that the state is intimately involved in the challenged private conduct for that conduct to be attributed to the state within the meaning of Section 1983. *See Bier v. Fleming*, 717 F. 2d 308, 311 (6th Cir. 1983). Without such a showing, there is no apparent state compulsion or a sufficiently close nexus between the private entities and government for them to qualify as state actors. Applying the three part test identified above, the inescapable conclusion is that the diocese and school cannot be subject to liability as state actors.[4]

b. *Reinersman and John Does 1-20*

Similar logic applies by extension to Reinersman and John Does 1-20 under Section 1983. It cannot be said that employees are state actors when the actions of their employer—a private Catholic institution—cannot be attributed to the state. Although they are named as defendants in their official capacities, they are employed by private entities inherently detached from any meaningful government influence. In other words, their actions as agents of the

---

[4] The plaintiff's claim in Count Two of racial discrimination pursuant to Section 1981 against the Diocese of Covington and St. Joseph Catholic School is not impacted.

Diocese of Covington or its associated private school are simply not clothed in the authority of the state. *United States v. Classic*, 313 U.S. 299, 326 (1941).

Doe attempts to salvage her claim of racial discrimination against Reinersman and John Does 1-20 by arguing that "Section 1981 prohibits intentional race discrimination in the making and enforcing of contracts with both public and private actors." *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867-68 (6th Cir. 2001). "The statute's protection extends to the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id*. Therefore, a Section 1981 discrimination "claim must be based on a contractual relationship." *See Woods v. Miamisburg City Schs.*, 254 F. Supp. 2d 868, 876 (S.D. Ohio 2003) (dismissing § 1981 claim for lack of a contractual relationship with the city in which the child went to school). While Doe presumably had a contract for C.B.'s educational services with St. Joseph Catholic School, no such contract exists directly with Reinersman or John Does 1-20. Ultimately, Doe's claims against these defendants pursuant to Sections 1981 and 1983 fail as a matter of law.

### C.  Disability Discrimination

Doe alleges in Counts Three and Four that the defendants discriminated against C.B. pursuant to Section 504 of the Rehabilitation Act which prohibits an *entity* that receives federal funding from engaging in disability discrimination. *See* 29 U.S.C. § 794(a). Her theory is that even individual defendants Hehman, Reinersman, and John Does 1-20 can face liability for injunctive and monetary relief under Section 504 because they are sued in their official capacities. However, it is well-settled that *individuals* cannot be sued under the Rehabilitation Act. *See Bevington v. Ohio Univ.*, 93 F. App'x. 748, 750 (6th Cir. 2004) (The plaintiff "may not maintain an action under the [Rehabilitation Act] against the individuals identified in his

complaint because the [the statute] does not impose liability upon individuals."); *see also Lee v. Mich. Parole Bd.*, 104 F. App'x. 490, 493 (6th Cir. 2004) ("[N]either the ADA, nor the [Rehabilitation Act] impose liability upon individuals"); *H.C. v. Fleming Cty. Ky. Bd. of Educ.*, 2017 WL 4249546, *10-11 (E.D. Ky. Sept. 25. 2017).

Even still, Doe argues her claims are distinct because they are pleaded against the defendants in their *official* capacities rather than in their *personal* capacities. However, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *See Kentucky v. Graham*, 473 U.S. 159 (1985). As such, courts routinely dismiss redundant claims against agents in their official capacities when the principal entity is also named as a defendant in the same suit. *See Johnson v. Washington Cty. Career Ctr.*, 2010 WL 2570929, at *4 (S.D. Ohio June 22, 2010); *Sorah v. Temp City Exempted Village School District Board of Ed.*, 611 F. Supp. 3d 441, 451 (S.D. Ohio 2020). Because Doe maintains a pending claim for the same cause of action against the diocese and the school, her official-capacity claims against Hehman, Reinersman, and John Does 1-20 will be dismissed.

### D. False Imprisonment

Doe alleges in Count Five that Cly Hehman falsely imprisoned C.B. in a classroom and elevator without justification. Doe asserts in her Complaint that C.B. was confined to these spaces without consent and felt that she could not leave either location based on the inherent power dynamic between a student and teacher. She also contends she "was in fear for [her] well-being." [Record No. 1] Hehman responds that C.B. was not detained in the classroom or the elevator by force or threat of force.

In Kentucky, "cases define false imprisonment as [a] deprivation of the liberty of one person by another or detention for however short a time without such person's consent and

against his will, whether done by actual violence, threats or otherwise." *Banks v. Fritsch*, 39 S.W.3d 474, 479 (Ky. Ct. App. 2001).  False imprisonment requires that "there be some direct restraint present." *Ford Motor Credit Co. v. Gibson*, 566 S.W.2d 154, 155 (Ky. Ct. App. 1977). That restraint "may arise out of words, acts, gestures, or the like, which induce a reasonable apprehension that force will be used if the plaintiff does not submit." *McDonald's Corp. v. Ogborn*, 309 S.W.3d 274, 288 (Ky. Ct. App. 2009) (quoting *Ford Motor Credit*, 566 S.W.2d at 155).  However, a person who "submi[ts] to the mere verbal direction of another unaccompanied by force, or threats of any character" is usually not falsely imprisoned under Kentucky law.  *Id.* (quoting *Ford Motor Credit*, 566 S.W.2d at 156).  As a result, "actual physical restraint is sufficient," while "[b]are words are insufficient." *Id.* (quoting *Ford Motor Credit*, 566 S.W.2d at 156).

The Court is unconvinced that the plaintiff's allegations are sufficient to proceed with this claim.  She merely asserts that C.B. "was not free to leave the classroom space or elevator because of the physical location of the confinement and authority." [Record No. 1] At no point does she claim Hehman stood in the way of her exit or otherwise forcibly blocked C.B. from ending the encounter.  The only verbal communication evident in the record occurred when Hehman told the her to "drop the whole thing." *Id*.  Of course, those words could be reasonably construed as a threat, but a threat alone is insufficient to show that the plaintiff was detained in a way that reasonably conveyed a physical trap by force.  After all, the "key element of false imprisonment is that one is involuntarily restrained." *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 277 (Ky. Ct. App. 1981) (emphasis added).

Examples of involuntary restraint include a teacher chaining a high school student to a tree, *see Banks v. Fritsch*, 39 S.W.3d 474, 476, 480 (Ky. Ct. App. 2001), and a supervisor

"depriv[ing]" an employee of "her clothing," subjecting her to "search and seizure of her body" despite her "repeate[d] object[ion]," and "threaten[ing]" her "with further police involvement," all while she was "under the impression the door had been locked" and faced with a "constant guard between herself and the door." *McDonald's Corp. v. Ogborn*, 309 S.W.3d 274, 281–82 (Ky. Ct. App. 2009). However, a mere threat by an employer to fire an employee for leaving work early, for example, cannot qualify as false imprisonment based in part on the dynamic of the principal-agent relationship. *Starks v. Mayfield Consumer Products, LLC*, 2023 WL 4875885, at *6 (W.D. Ky. July 31, 2023); *see also* Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, The Law of Torts § 42 (2d ed.) ("[O]f course a threat to do what the defendant is privileged to do, to fire an at-will employee if she leaves work, is not an actionable confinement.").

Hehman was privileged to engage in private discussions with C.B. inside the school as a teacher in charge of providing her with direction during school hours. Considering the facts in totality, the plaintiff simply does not establish that she was involuntarily restrained by force, a threat of force, or otherwise as required to plead a viable claim of false imprisonment.

Separately, Doe asserts that the Diocese of Covington, St. Joseph, and Monsignor Reinersman are vicariously liable for Hehman's actions through respondeat superior. But the claims against them are not viable because vicarious liability only attaches when a plaintiff pleads a cognizable underlying claim of primary liability. *See Estate of Collins v. Wilburn*, 755 F. App'x 550, 556 (6th Cir. 2018). Here, Doe has not set forth sufficient facts to plead a claim of false imprisonment against Hehman.

### E.  Intentional Infliction of Emotion Distress

Doe's claim against Hehman for intentional infliction of emotional distress ("IIED") fares no better than those discussed above.  She claims that Hehman "perpetuated extreme and outrageous conduct against [the plaintiff] by singling her out based on her race, making derogatory comments about her, and retaliating against [her] through intimidation and other tactics." [Record No. 1]  Specifically, the teacher's use of "n——" caused the plaintiff to suffer extreme emotional damage.  However, the Kentucky Supreme Court has "set a high threshold" for a successful IIED claim—requiring conduct that "deviat[es] from all reasonable bounds of decency and is utterly intolerable in a civilized community." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 791 (Ky. 2004), *overruled on other grounds by Toler v. Sud-Chemie, Inc.*, 458 S.W.3d 276 (Ky. 2014).  A prima facie case for IIED requires a showing: "(1) that the wrongdoer's conduct was intentional or reckless; (2) that the conduct was outrageous and intolerable and offends against the generally accepted standards of decency and morality; (3) a causal connection between the wrongdoer's conduct and the emotional distress; and (4) that the emotional distress was severe." *Stringer*, 151 S.W.3d at 788.

Simply put, the type of conduct Kentucky courts recognize as "outrageous and intolerable" is appalling.  Examples include "agree[ing] to care for plaintiff's long-time companion-animals, two registered Appaloosa horses, and then immediately s[elling] them for slaughter," *id*. at 790 (citing *Burgess v. Taylor*, 44 S.W.3d 806, 809–12 (Ky. Ct. App. 2001)); "subject[ing] plaintiff to nearly daily racial indignities for approximately seven years," *id*. (citing *Wilson v. Lowe's Home Center*, 75 S.W.3d 229, 238 (Ky. Ct. App. 2001)); and "intentionally fail[ing] to warn the plaintiff for a period of five months that defendant's

building, in which plaintiff was engaged in the removal of pipes and ducts, contained asbestos," *id*. at 789 (citing *Capital Holding Corp. v. Bailey*, 873 S.W.2d 187, 196 (Ky. 1994)).

IIED liability would not apply, for example, to a nurse who ordered a woman, "hysterical over the fact that she had just delivered a stillborn child in her hospital room, to 'shut up' and then inform[ed] her that the stillborn child would be 'disposed of' in the hospital." *Id*. at 790 (quoting *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 2, 4 (Ky. 1990)). Nor did a pastor who impregnated his parishioner's wife commit "outrageous and intolerable" conduct under Kentucky law giving rise to IIED liability. *See id*. at 791 (citing *Arlinghaus v. Gallenstein*, 115 S.W.3d 351 (Ky. Ct. App. 2003)).

Hehman's use of an insensitive and blatantly racist word is inappropriate, even for a teacher who claims she used the term in an educational context. Yet, she argues that she did not realize the plaintiff is an African American who would be disproportionately offended by hearing it. It is true that "knowledge that the other is peculiarly susceptible to emotional distress" may result in outrageous conduct, where such conduct "would not be so if [the actor] did not know." *Humana of Kentucky, Inc. v. Seitz*, 796 S.W.2d 1, 4 (Ky. 1990). Doe has never challenged Hehman's argument that she was ignorant of the plaintiff's race before making the comment.

The circumstances presented here do not fit the examples of those cases where an actionable claim for IIED has been recognized as cognizable. One of the essential elements of outrage is that the wrongdoer's conduct was outrageous and intolerable insofar as it offends objectively accepted standards and decency. *See Craft v. Rice*, 671 S.W.2d 247 (Ky. 1984). The requirement of outrageous and intolerable conduct is designed to limit frivolous suits and "avoiding litigation in situations where only bad manners and mere hurt feelings are involved."

*Id*. at 248. In other words, outrageous conduct requires conduct so extreme in degree to be regarded as atrocious, and utterly intolerable in a civilized community.

Although the public condemns the word Hehman used, it appears that Hehman uttered it within a single lesson during a particular school day and did not direct the term at C.B or anyone else. *See Farmer v. Dollar General Corp.*, 2012 WL 4364108, at *7 (W.D. Ky. Sept. 24, 2012) (finding use of the offensive term in a generalized conversation, not directed at the plaintiff, fell into a category of "petty insults, unkind words, and minor indignities."). Of course, Doe alleges that other students repeatedly used the term to describe her over a longer period without recourse. But this claim is pleaded against Hehman. Accepting all facts in the Complaint as true and making all reasonable inferences in favor of Doe, the Complaint nevertheless fails to sufficiently allege a claim for IIED.

### F. Retaliation under 42 U.S.C. § 1983

Doe claims in Count Eight that all defendants retaliated against her in violation of 42 U.S.C. § 1983. However, as previously noted, Section 1983 "by its own terms, applies only to those who act under color of state law." *Weser v. Goodson*, 965 F.3d 507, 515 (6th Cir. 2020). This claim cannot proceed because neither the defendant entities nor their employees can reasonably be regarded as state actors.

### G. Negligent Hiring, Supervision, and Retention

Finally, in Count Nine Doe asserts that Defendants Diocese of Covington, St. Joseph Catholic School, Monsignor Reinersman, and John Does 1-20 are liable for the negligent hiring, supervision, and retention of Hehman. However, "the employee must have committed a tort" for liability to arise under this cause of action. *Ten Broeck Dupont Inc. v. Brooks*, 283

S.W.3d 705, 727 (Ky. 2009). Based on the Court's determination that the tort claims against Hehman cannot proceed, this claim likewise fails.

## IV.    Conclusion

Based on the foregoing analysis and discussion, it is hereby **ORDERED** as follows:

1.    The motion for partial judgment on the pleadings by Defendant Hehman [Record No. 8] is **GRANTED**. Counts One (Title VII Race Discrimination), Three (Disability Discrimination), Five (False Imprisonment), Seven (Intentional Infliction of Emotion Distress), and Eight (Retaliation) against this defendant are dismissed with prejudice.

2.    The motion for partial judgment on the pleadings by Defendants Gerald Reinersman and John Does 1-20 [Record No. 9] is **GRANTED**. Counts One (Title VII Race Discrimination), Two (Sections 1981 and 1983 Race Discrimination), Four (Disability Discrimination), Five (False Imprisonment), Eight (Retaliation), and Nine (Negligent Hiring and Supervision) against these defendants are dismissed with prejudice.

3.    The motion for partial judgment on the pleadings by Defendants Diocese of Covington and St. Joseph Catholic School [Record No. 10] is **GRANTED**. Counts Two (Section 1983 Race Discrimination), Five (False Imprisonment), Eight (Retaliation), and Nine (Negligent Hiring and Supervision) against these defendants are dismissed with prejudice.

Dated: May 10, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky