IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | | |
|---|---|---|
| JANE DOE, by and through C.B. | : | Case No. 2:23-cv-00151-DCR-CJS |
| Plaintiffs, | : | Judge Danny C. Reeves |
| vs. | : | |
| DIOCESE OF COVINGTON, et al. | : | |
| Defendants. | : | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL DISCOVERY FROM PLAINTIFFS, TO OVERRULE PLAINTIFFS' OBJECTION TO THIRD-PARTY SUBPOENAS, AND TO COMPEL COMPLIANCE WITH SUBPOENAS DUCES TECUM**

Defendants, the Diocese of Covington, St. Joseph Catholic Church, Monsignor Gerald Reinersman, and Does 1-20 (collectively, "Defendants"), by and through counsel, hereby state as follows for their Reply in Support of their Motion to Compel Discovery from Plaintiffs, to Overrule Plaintiffs' Objection to Third-Party Subpoenas, and to Compel Compliance with Subpoenas Duces Tecum (hereinafter, "Defendants' Motion to Compel"). (Doc. 43.)

**INTRODUCTION**

Plaintiffs' Response is littered with self-contradictions. For instance, Plaintiffs invoke the psychotherapist privilege, which applies to communications occurring in the course of therapeutic diagnosis and treatment. But Plaintiffs characterize the communications at issue as "personal chat messages" that are "outside the scope of privileged psychotherapy … conversations," and which "cover a range of topics that extend well beyond the therapeutic context." (Doc. 51, p. 4-5 and 7.) Thus, the messages do not even fall within the privilege to begin with, just as messages exchanged with a friend who happens to be a therapist are not privileged. For this reason alone, all of the messages – plus what Plaintiffs refer to as "voice memos" – are discoverable. (*See id*., p. 1.)

1

Similarly, at times Plaintiffs argue they have not waived the privilege, but at other times they expressly concede they have waived the privilege as to the chat messages they believe are relevant.[1] Plaintiffs also argue at one point that the chat messages are not responsive to the Defendants' discovery requests, but then they state they have already produced the "responsive" chat messages that they believe are relevant on October 25.[2] Plaintiffs also object to producing the messages due to the putative burden of screenshotting, even though they have already produced some of those screenshots, and even though they are simultaneously trying to prevent a third-party production by Ms. Boston/Talkspace that would cause no burden to Plaintiffs at all. These self-contradictions demonstrate Plaintiffs are grasping at straws to prevent this discovery.

Plaintiffs' Response is also glaring in that it fails to cite a single case beyond those already cited in the Motion. Even worse, Plaintiffs mischaracterize those cases in order to make obviously false statements of law. For instance, Plaintiffs argue the requesting party bears the burden on whether privilege applies and whether it has been waived – when in reality the case law holds the opposite.[3] Plaintiffs also argue it would be fundamentally unfair to allow discovery of chat messages about unrelated stressors – when the case Plaintiffs cite literally states the opposite.[4]

---

[1] *Contrast* Doc. 51, p. 4: "Plaintiffs … maintain that the privilege has not been waived," *with id*., p. 5: "Plaintiffs have only waived privilege to the extent necessary for relevant discovery[.]"

[2] *Contrast* Doc. 51, p. 2: "[T]hese messages fall outside the scope of the … discovery requests[;]" *with id*., p. 10, where Plaintiffs state they have "already provided [the] responsive, relevant" chat messages.

[3] *Contrast* Doc. 51, p. 3: "when privilege is asserted, the requesting party bears the burden of proving that no waiver has occurred and that privilege does not protected the requested information[;]" *with U.S. v. Brown,* 2023 WL 4353162, *2 (W.D. Ky. 2023) ("Defendant [i.e., the party invoking privilege in that case] carries the burden of establishing the existence of psychotherapist privilege. To meet that burden, Defendant must demonstrate that the privilege has not been waived.") (internal citation omitted).

[4] *Contrast* Doc. 51, p. 9: "*Langenfeld* … reinforces that it would be 'fundamentally unfair' to extend discovery into unrelated stressors[;]" *with Langenfeld v. Armstrong World Indus., Inc.,* 299 F.R.D. 547, 554 (S.D. Ohio 2014): "It would be fundamentally unfair to allow Plaintiff to assert that Defendant's actions caused her mental distress, **but not allow Defendant to explore another stressor** that all parties agree was present at or around the same time." (emphasis added).

Considering Plaintiffs requested an extension to file their Response on the grounds they "needed time to research" (Doc. 49, ¶ 3), this is apparently the best Plaintiffs could come up with: mischaracterizations of the cases Defendants have already cited (all of which support Defendants' Motion to Compel), plus screenshots of Talkspace's website obtained via google search (which cannot support an objection, because Plaintiffs lack standing to make objections on Talkspace's behalf). There is no question the Defendants are entitled to this information. Defendants' Motion should be granted so that the information is provided by Plaintiffs and Ms. Boston/Talkspace.

## PROCEDURAL HISTORY

In their Motion to Compel, Defendants set forth in great detail the exhaustive efforts undertaken to obtain the therapy information since April. (Doc. 43-1, p. 2-9.) Plaintiffs' Response does not dispute a single aspect of that Procedural History. Thus, the following are undisputed: (1) both Plaintiffs are pursuing claims for emotional distress, for which they intend to seek over $100,000 in damages; (2) both Plaintiffs started treating with Ms. Boston specifically to address the alleged emotional distress, and Plaintiffs are seeking to recover for the cost of this therapy; (3) Plaintiffs intend to call Ms. Boston as a witness at trial; (4) Plaintiffs signed "Authorizations to Release Psychotherapy Notes" without objection; (5) Plaintiffs allowed subpoenas to be issued to Ms. Boston and Talkspace without objection; (6) Jane Doe testified specifically about what she discussed with Ms. Boston via chat message; and (7) Plaintiffs are (despite claiming undue burden on their own behalf) obstructing Defendants' efforts to obtain this information from Ms. Boston/Talkspace (which would place zero burden on Plaintiffs). Nor do Plaintiffs dispute the statements made by this Court during the October 9th teleconference, in terms of the "puzzling" nature of the position of Ms. Boston/Talkspace, and about how Plaintiffs, Ms. Boston, and Talkspace are "talking circles" around the Defendants. (Doc. 43-1, p. 8 and 15.)

3

Since the filing of Defendants' Motion to Compel on October 15, Plaintiffs have taken an additional action which constitutes a ***fourth*** distinct waiver of any psychotherapist privilege (assuming it applies at all). That is, on October 25, Plaintiffs produced some, but not all, of their direct chat communications with Ms. Boston, which they claim to be "screenshot[s] [of] the messages relevant to these proceedings." (Davis Email dated 10/25/24, attached as **Exhibit 19**.[5])

The only effect of the production on October 25 is confirmation that Plaintiffs have waived any privilege (four times over). Indeed, for several reasons, the production does not minimize the need for an Order compelling Plaintiffs, Ms. Boston, and Talkspace to produce all messages in their possession, custody, or control. For instance, both sets of messages are undated and partially cut off. Second, it is impossible to determine what percentage of the total messages have been produced. Third, references to procedural events in 2024 seems to indicate that the messages were all exchanged recently, as opposed to around the time of the events in April of 2023.[6]

## ARGUMENT

Plaintiffs' objections are basically as follows: (1) the psychotherapist privilege; (2) overbreadth/lack of relevance as to chat messages that are unrelated to the mental and emotional

---

[5] Exhibit 19 does not include the chat messages, which have been filed under seal at Doc. 56 and Doc. 58. Notably, Plaintiffs' production on October 25 was in response to an October 22nd email in which the undersigned inquired about Plaintiffs' failure to provide deposition dates for C.B., Ms. Boston, and another witness before the November 1st discovery deadline. (Enzweiler Email dated 10/22/24, attached as **Exhibit 20**.) Those depositions had been requested on October 8, when it became apparent that the chat messages would not be obtained before November 1. (*Id*., p. 2, ¶ 4; *see also* Doc. 43-1, p. 15, fn. 10.) Plaintiffs' counsel responded that he was "okay with the depositions out of time if you don't object to my request for extension to file a response to your motion to compel." (Ex. 19.) Plaintiffs have still not offered a single deposition date, and it was improper for Plaintiffs to try to gain an advantage on this Motion by seizing on a circumstance they created by failing to provide timely deposition dates before the discovery deadline.

[6] *See, e.g.,* Doc. 58, p. 6, which refers to the Court's dismissal of many claims on May 10, 2024, *and id*., p. 1, which refers to the deposition of former defendant, ClyDenna Hehman, on September 12, 2024. These timeframes are consistent with Plaintiffs' recent representations that they may only be able to access chat messages going back to May of 2024. Plaintiffs have not yet responded to the Defendants' pending interrogatory asking whether Plaintiffs have deleted any earlier messages. (*See* Doc. 52, ¶ 3.)

4

conditions allegedly caused by the Defendants; (3) undue burden as to Plaintiffs producing screenshots and Talkspace producing the messages; and (4) objections based on Talkspace's preference to not produce messages.[7] But as shown below, it is indisputable that none of these objections prevent the discovery of all chat messages exchanged with Ms. Boston. Accordingly, Plaintiffs should be compelled to produce all of their chat messages (not just the ones they believe are relevant), and the Court should overrule Plaintiffs' subpoena objection so that the Defendants can issue subpoenas duces tecum to Ms. Boston and Talkspace.

**I.    Plaintiffs' convoluted privilege objection should be rejected.**

As an initial matter, Plaintiffs falsely argue "the burden … falls on Defendants to establish that no [psychotherapist] privilege applies, or that it has been waived." (Doc. 51, p. 4.) Plaintiffs do not cite any legal authority to support this, because it violates fundamental principles about how a party seeking to invoke any privilege must prove that the privilege applies – and that it has not been waived. *Whitworth v. Consol. Biscuit Co.*, 2007 WL 9736117, at *4 (E.D. Ky. Feb. 2, 2007) ("The burden of establishing protection – including the burden of showing non-waiver – rests on the party asserting the privilege. … Thus, Defendants, who assert that no waiver occurred and that the privilege is intact, bear the burden on the argument.") (internal citations omitted). The burden on Plaintiffs' privilege objection is born exclusively by Plaintiffs.

**A.    Plaintiffs have not demonstrated that the chat messages even generally fall within the scope of the psychotherapist privilege (absent waiver).**

Testimonial privileges do not supply a blanket protection for every communication made within a defined relationship. For instance, the attorney-client privilege does not protect each and

---

[7] Plaintiffs briefly argue that HIPAA prevents this discovery, because "there was never informed consent to release" these messages. (Doc. 51, p. 2 and fn. 2.) But, HIPAA does not entitle Plaintiffs to avoid producing (or prevent third parties from producing) relevant, unprivileged health information that is central to their claims. And, Defendants are following the proper HIPAA procedure of sending notices of intent to issue subpoenas (Doc. 16), and then seeking Court resolution of Plaintiffs' objections to those subpoenas.

5

every communication with an attorney; it protects communications made for the purpose of securing legal advice. Likewise, the psychotherapist-patient privilege does not protect each and every communication "between a licensed psychotherapist and her patients" as Plaintiffs suggest. (Doc. 51, p. 8.) It protects communications made for the purpose of securing therapeutic diagnosis or treatment. *Simon v. Cook*, 261 Fed. Appx. 873, 886 (6th Cir. 2008) (limiting the privilege to communications "in the course of diagnosis or treatment[.]")  This is the scope of the privilege, and Plaintiffs bear the burden of proving that all of their messages fall within that scope.

Plaintiffs have not done so. In fact, Plaintiffs' own characterization of their chat messages demonstrates they are ***not*** communications made for therapeutic diagnosis or treatment:

- "Text messages … do not include diagnosis, treatment plans or any professional medical opinions" (Doc. 51, p. 2)

- "the text messages at issue … concern personal matters outside the scope of privileged psychotherapy notes or conversations" (*Id*., p. 4)

- "these text communications … cover a range of topics that extend well beyond the therapeutic context" (*id*., p. 5)

- "these chat messages serve as a space for informal, supportive conversation, without constituting structured medical information" (*id*., p. 7)

- "non-medical communications … [that] lack medical significance [and] do not constitute diagnoses or medical conditions (*id*., p. 8)

Thus, according to Plaintiffs, the chat messages at issue are informal and non-medical; they are not related to therapeutic diagnosis or treatment; they concern matters outside the scope of privileged conversations; and they extend well beyond the therapeutic context.

Under Plaintiffs' own characterization, the chat messages they are trying to shield on the basis of privilege are not limited to confidential communications made for the purpose of therapeutic diagnosis or treatment. Thus, Plaintiffs' entire privilege argument falls at the outset. Defendants' Motion to Compel should be granted.

6

### B.  Even if the psychotherapist privilege generally applies to the chat messages, Plaintiffs have not demonstrated that they did not waive it.

Plaintiffs admit they have "waived privileged to the extent necessary for relevant discovery regarding Plaintiffs' treatment." (Doc. 51, p. 5.) This admission should end the privilege inquiry entirely, for all of the chat messages are relevant. But in addition to Plaintiffs' admission, none of the contradictory arguments elsewhere in Plaintiffs' Response have any merit.

#### 1.  Plaintiffs waived any privilege by putting their mental health in issue.

Plaintiffs do not dispute they have put their mental health in issue by asserting claims for depression, anxiety, and mental anguish. Their only argument is that the Defendants have not provided sufficient legal authority applying this form of waiver to chat messages. To the contrary, it is Plaintiffs who have provided zero legal authority to defeat this form of waiver.[8]

Plaintiffs argue waiver has a "limited scope" and "does not inherently extend to all forms of communication[.]" (Doc. 51, p. 5 and 9.) Yet Plaintiffs offer no authority to support some sort of limited or tiered waiver that allows discovery of some communications (i.e., the messages Plaintiffs have produced), but not others (i.e., messages Plaintiffs believe are irrelevant). The privilege applies to communications, and waiver makes those communications discoverable.

Plaintiffs next argue that the waiver cases cited by the Defendants "do not apply to informal communications like text messages that are not integrated into the therapist's medical records."

---

[8] Notably, Plaintiffs have not invoked the so-called "garden variety damages" doctrine, under which a plaintiff does not waive the privilege if she seeks recovery only for the "short-term negative emotions that would typically flow" from the conduct. *Langenfeld v. Armstrong World Indus., Inc.,* 299 F.R.D. 547, 553 (S.D. Ohio 2014). Regardless, this doctrine does not apply if one of five circumstances are present, *id.* at 552, and Plaintiffs' case satisfies four out of five: (1) they have asserted a claim for intentional infliction of emotional distress (Doc. 1, p, 16); (2) they are alleging specific psychiatric injuries (i.e., mental anguish, depression, and anxiety); (3) they have alleged unusually severe emotional distress (i.e., the alleged ruination of their lives) (Doc. 1, ¶ 58); and (4) they have offered Ms. Boston as an expert to support claims for emotional distress. *See Langenfeld*, 299 F.R.D. at 553 (finding waiver because the allegations about stress and sleep deprivation were not garden-variety damages, and because ongoing sleep deprivation constitutes a specific psychiatric injury). This doctrine clearly does not apply in this case.

(Doc. 51, p. 5.) True, the cases do not specifically concern chat messages exchanged with a therapist via an online therapy platform. But, the cases set forth basic waiver principles that apply to all "communications" with a therapist, and Plaintiffs do not provide any sort of legal justification for why these principles apply to all communications *except* text messages.[9]

Plaintiffs' only attempt to distinguish *Maday v. Public Libraries of Saginaw*, 480 F.3d 815 (6th Cir. 2007), is to claim that the communication in that case was a "notation" by the therapist, rather than "non-medical text messages." (Doc. 51, p. 5.) But, the "notation" in *Maday* concerned the client's communication that she was "unhappy with her attorney," which is no more medical than what Plaintiffs discussed with Ms. Boston. Just as "there exists no heightened privilege for statements made … to a social worker about that client's attorney," *see id.*, there is likewise no heightened privilege for text-message communications with a therapist.

Ultimately, Plaintiffs act as if it is the Defendants' burden to produce a case specifically holding that Talkspace chat messages are discoverable when the privilege has been waived. Once again, Plaintiffs have the burden backwards. It is their burden to justify their apparent position that chat messages – which they admit are "communications" – are somehow immune from basic waiver principles that apply to communications. Plaintiffs have provided no such authority.[10]

---

[9] Plaintiffs argue that "raw text communications" are somehow "less probative" because they have not been formalized in the therapist's documentation. The "raw" nature of the messages is precisely why they are probative: they reflect the actual substance of what Plaintiffs were telling their therapist (not the therapist's interpretation). Plaintiffs' suggestion that only formalized records are discoverable is wrong. The Rules of Evidence contain a hearsay exception specifically for patient statements describing "past or present symptoms" or "their general cause." Fed. R. Evid. 803(4). Under Plaintiffs' standard, this rule would be meaningless because only the medical records – not the patient's actual statements – would be discoverable.

[10] By analogy, one may be unable to find a case holding that a handwritten message on a cocktail napkin is discoverable when the attorney-client privilege has been waived, but that certainly does not mean cocktail napkins are entitled to some sort of heightened legal protection, or that they are immune from basic waiver principles. The same goes for Talkspace chat messages, which Plaintiffs appear to characterize as a relatively new form of therapy that is becoming more popular. (*See* Doc. 51, p. 7, citing the "increased use of digital therapy.") Basic waiver principles must apply to newly developed forms of communication.

### 2. Plaintiffs also waived any psychotherapist privilege by signing Authorizations to Release Psychotherapy Notes.

As Defendants predicted, Plaintiffs' only response to this method of waiver is arguing that chat messages do not fall within the scope of the Authorizations, which used the phrase "medical information." (*Compare* Doc. 43-1, p. 12, fn. 8; *with* Doc. 51, p. 6.)  This argument is beside the point, because allowing the release of information about "the type, and frequency, and effective of therapy (including psychotherapy notes)" waives the entire psychotherapist privilege in the Sixth Circuit, and the Authorizations specifically referenced "psychotherapy notes."[11] (Doc. 41-4.)

Moreover, Plaintiffs' argument suggests they have known about the messages all along and have been relying on a hyper-technical interpretation of the Authorizations with knowledge that the messages would not be produced by Talkspace under the Authorizations.  But if that was the case, Plaintiffs intentionally omitted any reference to the chat messages (or any purported privilege) in discovery.  For example, when Defendants asked for "any and all text messages … that were created, received, edited, or maintained by Plaintiffs, and which contain information related in any way to the allegations of the Complaint," Plaintiffs stated they were "producing all of the requested documents that exist." (Doc. 43-3, p. 4-5, Request No. 2.)

Plaintiffs obviously exchanged text messages with Ms. Boston that contain relevant information, because Plaintiffs just produced some of them on October 25. (Doc. 56 and 58.)  But, Plaintiffs did not identify these messages (or claim any privilege) – apparently because they knew the messages would not be produced by Talkspace, and they did not want to inform the Defendants that the messages existed.  These circumstances further highlight Plaintiffs' unreasonableness.

---

[11] Plaintiffs argue the messages "do not meet the legal criteria for medical records[.]" (Doc. 51, p. 7.) Plaintiffs never identify what those putative criteria are, but in any event, the only possible bearing of their medical (or non-medical) nature concerns whether they fall within the phrase "medical information" as used in the Authorizations (which also uses "psychotherapy notes" anyway).  Whether or not they are "medical records" has no bearing on privilege, waiver by means beyond the Authorizations, or relevance.

9

### 3.   Plaintiffs also waived any psychotherapist privilege by disclosing the substance of the therapy sessions during deposition.

Plaintiffs argue that Jane Doe's "limited testimony" about the chat messages she exchanged with Ms. Boston did not waive the privilege. (Doc. 51, p. 7.) Defendants agree with one aspect of this argument: her testimony about chat messages was indeed limited. (*See* Doc. 43-1, p. 5-6.) This is precisely why it is necessary to discover the actual chat messages themselves.[12]

Moreover, to the extent Plaintiffs wished to rely upon the psychotherapist privilege to prevent discovery of the chat messages, it was incumbent upon Plaintiffs' counsel to instruct Jane Doe not to answer when she was asked about the substance of the messages. *See* Fed. R. Civ. P. 30(c)(2) (authorizing counsel to "instruct a deponent not to answer" when "necessary to preserve a privilege.") Plaintiffs offer no legal authority and no coherent argument about how the privilege was not waived when counsel explicitly told Jane Doe she could "go ahead and answer" a question about the substance of the chat messages, and Jane Doe then did so. *But see LifeBio, Inc. v. Eva Garland Consulting, LLC*, 672 F.Supp.3d 512, 523 (S.D. Ohio 2023) (finding the plaintiff waived the attorney-client privilege as to an email when, *inter alia*, plaintiff's counsel "objected to the document [at a deposition] but allowed questioning [about the email] to proceed.")

### 4.   Plaintiffs also waived any psychotherapist privilege by producing a subset of their chat messages.

To the extent there was any doubt about Plaintiffs' waiver of the psychotherapy privilege, Plaintiffs' October 25th production of a subset of their chat messages removes that doubt. For instance, at one point Plaintiffs' Response argues that all of the circumstances leading up to the

---

[12] Defendants have filed the Talkspace therapy records for both Jane Doe and C.B. under seal. (Doc. 55; Doc. 57.) Even a cursory review of those records reveals how misleading it is for Plaintiffs to continue to claim that they are "detailed medical notes or records." (*See* Doc. 51, p. 7.) The therapy records are extremely vague and are certainly not a substitute for the actual messages, which were being exchanged in multiple texting sessions. (*Contrast* the number of "chat" communications identified at Doc. 55, p. 2 and 5, respectively; *with* the "summary" of those communications at Doc. 55, p. 3 and 6, respectively.)

10

Defendants' Motion did not "equate to a knowing and voluntary waiver" of the psychotherapist privilege. (Doc. 51, p. 7.) Plaintiffs are wrong about that as a matter of law, for the reasons discussed above. But there can be no clearer method of knowingly and voluntarily waiving a privilege than producing the documents ostensibly protected by the privilege when a Motion to Compel is filed. At this point, it is indisputable that Plaintiffs have waived the psychotherapist privilege. *See LifeBio*, 672 F.Supp.3d at 524 ("Plaintiff wants the Court to protect the sanctity of attorney-client communications. But it was Plaintiff's obligation to treat the privilege like a crown jewel. Plaintiff continually failed to meet its obligations and, as a result, waived privilege.")

Finally, to the extent Plaintiffs' privilege argument – which is all over the map at this point – is essentially that they agree they have waived privilege as to the chat messages that have been produced, but they are trying to maintain the privilege as to those messages they have not produced, obviously that position is untenable. Plaintiffs do not get to pick and choose which chat messages to produce, while maintaining privilege as to those they do not want to produce. Such would be a quintessential example of trying the use the privilege both as a sword (e.g., waiving the privilege as to chat messages they are fine producing ) and a shield (e.g., by somehow maintaining privilege as to those chat messages they do not want to produce).

## II. Plaintiffs' objections about overbreadth and lack of relevance as to chat messages that are unrelated to the events in issue are meritless.

On page 8 of their Response, Plaintiffs appear to negate every privilege argument made earlier in their Response, by implying that their real objection is not based on privilege, but on lack of relevance and overbreadth as to the chat messages they have decided not to produce.[13] To the extent Plaintiffs' objection is truly based on relevance at this point, a large portion of this discovery

---

[13] *See* Doc. 41, p. 8: "Plaintiffs are not disputing whether the messages constitute 'communications' with Ms. Boston; rather, they argue that not all communications are relevant to this case[.]"

11

dispute has been an unnecessary waste of time litigating over an immaterial privilege issue.  In any event, Plaintiffs' argument that only the chat messages about "the mental and emotional conditions allegedly caused by Defendants' actions" are discoverable is wrong as a matter of law.

First, Plaintiffs argue that *Langenfeld v. Armstrong World Indus., Inc.*, 299 F.R.D. 547, 554 (S.D. Ohio 2014), illustrates that "only communications directly relevant to the alleged emotional harm and damages are subject to discovery."  (Doc. 51, p. 8.)  Plaintiffs are clearly mischaracterizing *Langenfeld*, which states as follows:

> [T]he records sought in this case are a far cry from a fishing expedition, as all parties agree that Plaintiff underwent another significant stressor (her husband's illness and surgery) at the same time she was terminated from Defendant's employ.  It would be fundamentally unfair to allow Plaintiff to assert that Defendant's actions caused her mental distress, but not allow Defendant to explore another stressor that all parties agree was present at or around the same time.

*Id*. at 554.[14]  Other courts similarly reject efforts by plaintiffs to limit discovery to only the therapy information about the emotional distress in issue, to the exclusion of other sources of emotional distress that may mitigate against the emotional distress being claimed.  *Dudley v. Stevens*, 338 S.W.3d 774, 777 (Ky. 2011) ("It would be fundamentally unfair to permit Appellant to allege and prove mental anguish caused by the negligence while denying the Real Parties in Interest from reviewing her mental health records for the possibility of pre-existing mental conditions.").

Here, the Talkspace records demonstrate that certain aspects of therapy for both Jane Doe and C.B. concerned other stressors that were either pre-existing or at least present around the same

---

[14] This is not the first time Plaintiffs have miscited *Langenfeld*.  In fact, the only reason *Langenfeld* was even raised in this case is because Plaintiffs' position statement quoted the initial order from the magistrate judge, which was explicitly set aside by the district court as "contrary to law."  *Contrast* Doc. 43-14, p. 2, quoting *Langenfeld,* 298 F.R.D. 544, 545 (S.D. Ohio 2014); *with Langenfeld,* 299 F.R.D. at 554.

12

time as the events in issue.[15]  Defendants are entitled to explore these other stressors and, if appropriate, present them to the jury as mitigating factors on the claims for emotional distress, including Plaintiffs' claim that the Defendants have "ruined their lives." (*See* Doc. 1, ¶ 58.)

Finally, Plaintiffs do not dispute they are seeking to recover the cost of their therapy treatments, yet they fail to address the obvious relevance of the messages in terms of determining which treatments were causally related to the claims at issue.  (*See* Doc. 43-1, p. 14.)  In fact, Plaintiffs' silence on this point may be indicative of their determination to recover for treatments that are not causally related to, as Plaintiffs put it, the "emotional impact of these events."[16]

### III.  Plaintiffs' undue burden objection must be rejected.

Plaintiffs argue it would be "overly burdensome" for them to produce all of their messages, because "the only way to provide copies … is to screen shot each message on the phone and then to redact each message that is not relevant[.]" (Doc. 51, p. 1 and p. 2, fn. 1.)  First, Plaintiffs have waived any claim of undue burden in the form of screenshotting.  Plaintiffs have already done this for some of their messages, thus screenshotting is not that burdensome – and certainly not to a degree to prevent this discovery.  Second, under Plaintiffs' own argument, producing all of the messages would be *less* burdensome than redacting those they (incorrectly) believe are irrelevant.  In this regard, Plaintiffs' undue burden claim only supports production of all of the messages.

Finally, Plaintiffs are also objecting to the Defendants' efforts to obtain the messages via subpoenas duces tecum.  Plaintiffs cannot cite their own putative burden as a means of preventing

---

[15] *See, e.g.,* Doc. 57, p. 5, which refers to C.B.'s "difficult feelings related to ongoing issue with work" that were discussed during C.B.'s very first session on May 15, 2023; *see also* Doc. 55, p. 6, referring to Jane Doe's "continued inconsistency and difficulty with emotional regulation with relationship with mother."

[16] For instance, Ms. Boston's documentation from C.B.'s therapy session on June 1, 2023, states in its entirety: "Client given space to process emotions and difficult feelings related to recent breakup." (Doc. 57, p. 6.)  On its face, this therapy session appears to have nothing to do with the alleged claims in this case.

13

them from producing the messages, while simultaneously preventing a third-party production that would cause them no burden at all. Plaintiffs cannot have it both ways.

### IV.   Plaintiffs' objections to the subpoenas to Ms. Boston/Talkspace are meritless.

Plaintiffs argue "Defendants have not demonstrated that these third parties possess the requested records in a manner that is reasonably obtainable under Rule 45 without undue burden." (Doc. 51, p. 10.) For a third time, Plaintiffs have the burden backwards. *See* Fed. R. Civ. Proc. 45(e)(1)(D) ("On motion to compel discovery[,] … ***the person responding must show*** that the information is not reasonably accessible because of undue burden or cost.") (emphasis added.) Defendants have not even had the opportunity to issue the subpoenas, because Plaintiffs' objections have halted the subpoena process. This first objection is wrong as a matter of law.[17]

Plaintiffs' only other objection is that "Talkspace has maintained a strict policy against disclosing client therapeutic text messages to any court."[18] (Doc. 51, p. 2.) Once this Court authorizes a subpoena duces tecum, Talkspace will have an opportunity to explain why it should not be compelled to produce information within its possession. But Talkspace's self-serving policy – which itself recognizes this Court's authority to compel production of chat messages – is certainly not a basis to strip the Defendants of their ability to issue the subpoena in the first place. In fact, Plaintiffs lack standing to even raise an objection of this nature on behalf of Talkspace, since it is indisputable that Plaintiffs have waived any claim of privilege over the chat messages. *Simonoff v. Saghafi*, 2018 WL 11306069, at *2 (N.D. Ohio May 18, 2018) ("Courts in the Sixth

---

[17] Plaintiffs appear to argue it is "speculative" to assume that either Ms. Boston or Talkspace can produce the messages. (*See* Doc. 51, p. 10.) Yet one (or both) of them must necessarily be able to produce the messages. The only speculative assertion is Plaintiffs' claim that it would be unduly burdensome to do so.

[18] This objection is based on a statement on Talkspace's website, which is clearly a marketing tool, about how "Talkspace has never turned over [chat messages] in the 10 years we have been providing therapy, … [but] we cannot 100% guarantee that a court would not compel us to turn over [messages]." (Doc. 51-5.)

14

Circuit have consistently held that a party ordinarily has no standing to challenge a subpoena to a non-party without first showing a claim of privilege or personal privacy right exists in the information sought.")  This final objection to the subpoenas must also be rejected.

## CONCLUSION

Plaintiffs claim the Defendants are "asking this Court to engage in an unprecedented action without offering the necessary case law or legal basis[.]"  (Doc. 51, p. 3.)  To the contrary, Defendants are seeking a routine production of fundamental information pursuant to well-established discovery principles.  The only arguments without legal basis are Plaintiffs' claims about "established limits on privilege waiver," plus Plaintiffs' suggestion that chat messages exchanged with a therapist deserve some sort of heightened legal protection.  Likewise, the only unprecedented aspects of this dispute are how three parties have been "talking circles" around who can produce these messages, and how Plaintiffs want to strip the Defendants of their right to issue subpoenas duces tecum to determine once and for all who can do so.  Defendants are entitled to the chat messages, and they are not required to simply accept whatever messages Plaintiffs are willing to produce.  Defendants' Motion to Compel should be granted.

Respectfully submitted,

/s/ Michael J. Enzweiler
Mark D. Guilfoyle (KBA #27625)
Nicholas C. Birkenhauer (KBA #91901)
Michael J. Enzweiler (KBA #96989)
DRESSMAN BENZINGER LAVELLE PSC
109 East Fourth Street
Covington, KY 41011
(859) 341-1881 (T)
(859) 341-1469 (F)
mguilfoyle@dbllaw.com
nbirkenhauer@dbllaw.com
menzweiler@dbllaw.com
*Counsel for Defendants*

15

<u>CERTIFICATE OF SERVICE</u>

    I hereby certify that a copy of the foregoing was served on all counsel of record through the Court's CM/ECF system this 6th day November, 2024.

                                             <u>/s/ Michael J. Enzweiler</u>
                                             Michael J. Enzweiler (KBA #96989)